UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRAIG H. and A.H.,<br><br>    Plaintiffs,<br><br>v.<br><br>BLUE CROSS OF IDAHO, dba BLUE CROSS OF IDAHO; BLUE CROSS OF IDAHO CARE PLUS, INC.; BLUE CROSS OF IDAHO FOUNDATION FOR HEATH INC.; BLUE CROSS OF IDAHO HEALTH SERVICE, INC.; MICRON TECHNOLOGY, INC., a Delaware corporation; MICRON TECHNOLOGY, INC. HEALTH AND WELFARE BENEFITS PLAN; MICRON TECHNOLOGY INC. SELF-INSURED GROUP HEALTH PLAN, a Constituent Plan of the Micron Technology Inc. Health and Welfare Benefits Plan,<br><br>    Defendants. | Case No. 1:23-cv-00221-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are numerous motions. Defendant Blue Cross of Idaho ("BCI") has filed a Motion to Dismiss (Dkt. 12) as has Defendant Micron Technology, Inc. ("Micron") (Dkt. 15). Plaintiffs Craig H. and A.H. (collectively "the H. Family") oppose both motions. Additionally, the H. Family filed two Motions to Strike. Dkts. 20, 30.[1] On

---

[1] BCI also filed a Motion to Seal in conjunction with the present motions (Dkt. 23) which the Court granted (Dkt. 34).

MEMORANDUM DECISION AND ORDER – 1

April 10, 2024, the Court held oral argument on all Motions. At the hearing, the Court orally ruled that it would not strike the documents at issue in the H. Family's Motions, but it would likewise not consider them at this stage of the case either. The Court took the remaining motions under advisement.

Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART BCI's Motion to Dismiss, GRANTS in PART and DENIES in PART Micron's Motion to Dismiss, and DENIES the H. Family's Motions to Strike.

## II. BACKGROUND

### A. Factual History

Defendant Micron is Craig H.'s employer. Like many employers, Micron has a health insurance plan (the "Plan"). That Plan is administered by Defendant BCI. Craig H.'s minor son, A.H., is a beneficiary of the Plan.

A.H. has a long history of mental health issues and has required extensive medical services throughout his life. Relevant here, the Plan provides coverage for medically necessary treatment of mental health conditions at different levels of care based on the intensity of service provided, including in a Residential Treatment Center ("RTC") and Partial Hospitalization Program ("PHP").

"Medically necessary" is defined in the Plan as:

> [T]he Covered Service or supply recommended by the treating Provider to identify or treat a Participant's condition, Disease, Illness or Accidental Injury and which is determined by Blue Cross of Idaho to be:
> 1. The most appropriate supply or level of service, considering potential benefit and harm to the Participant.
> 2. Proven to be effective in improving health outcomes;
>    a. For new treatment, effectiveness is determined by peer

> reviewed scientific evidence;
> b. For existing treatment, effectiveness is determined first by peer reviewed scientific evidence, then by professional standards, then by expert opinion.
> 3. Not primarily for the convenience of the Participant or Provider.
> 4. Cost Effective for this condition.

Dkt. 12-2, at 62.

In November 2021, at the age of 16, A.H. attempted suicide. A.H.'s parents took him to the emergency room for treatment, and the ER team determined A.H. should be treated at an inpatient acute psychiatric facility. Over the next five months, A.H. received treatment at several mental health institutions, including one in California called Newport Academy ("Newport").

BCI authorized A.H.'s treatment at Newport until February 2, 2022, when BCI determined that treatment at the RTC level of care was no longer medically necessary. Newport appealed the decision. BCI denied the same and A.H. was discharged.

Over the next several months A.H. was admitted to inpatient and outpatient facilities for treatment. BCI approved all treatment as medically necessary.

In July 2022, after a decline in his mental health, A.H.'s psychologist recommended that he be admitted to a long-term RTC. A.H.'s mother, Lori H., worked with BCI to find an in-network RTC for A.H., but to no avail. Eventually, A.H. was admitted to an out-of-network facility in Utah: Oxbow Academy ("Oxbow").

Because Oxbow as out-of-network, BCI entered into a single case agreement ("SCA") with Oxbow (with Micron's approval), that specified the per diem allowances for RTC and PHP care at that facility.

MEMORANDUM DECISION AND ORDER – 3

From the date of A.H.'s admission to Oxbow on July 26, 2022, until August 17, 2022, BCI determined that RTC was medically necessary and approved coverage for A.H.'s RTC care at Oxbow. On August 17, 2022, BCI denied coverage for further RTC services after it determined that A.H.'s treatment at that level of care was no longer medically necessary.[2]

On or about August 23, 2022, A.H. was moved to the PHP level of care at Oxbow. BCI covered the first 28 days of that treatment. When Oxbow requested an additional 14 days of PHP treatment, BCI had a third-party physician review A.H.'s medical records. That physician determined continuing PHP treatment was unnecessary. The H. Family (and Oxbow) appealed that decision. BCI upheld its determination that continued PHP treatment was not medically necessary and, therefore, was not covered under the Plan.

During the appeal process, in November 2022, Lori H. reached out to BCI and Micron requesting various documents dealing with information on the medically necessary criteria and how non-quantitative treatment limitations ("NQTLs")[3] are evaluated vis-à-vis mental health benefits. Micron and BCI responded with various documents.

The H. Family paid for continuing treatment at Oxbow out of pocket until April 29,

---

[2] Oxbow appealed this decision and, after an external review, BCI ultimately overturned its denial and covered the RTC level of care for the week of August 16-22, 2022. BCI denied further coverage at that level.

[3] The Mental Health Parity and Addiction Equality Act ("MHPAEA") regulates health plans that provide coverage for mental health issues. Specifically, the MHPAEA requires treatment limitations applicable to mental health be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . ." 29 U.S.C. § 1185a(3)(A)(ii). Treatment limitations can be quantitative, such as limits on the number of visits, or nonquantitative, such as limits based on the "scope or duration of benefits for treatment." 29 C.F.R. § 2590.712(a)-(c).

MEMORANDUM DECISION AND ORDER – 4

2023, when it could no longer afford the cost associated with treatment. Thereafter, A.H. was discharged from Oxbow.

### B. Procedural History

The H. Family filed the instant suit on May 3, 2023. Dkt. 1. In the Complaint, the H. Family brings four causes of action (styled as A, B, C, and D) as follows:

> A. Recovery of benefits under 29 U.S.C. § 1132(a)(1)(B);
> B. Claim for failure to establish and follow reasonable claims procedures and internal appeals process under 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715;
> C. Claim for violations of MHPAEA under 29 U.S.C. § 1132(a)(3);
> D. Request for statutory penalties for failure to supply required information under 29 U.S.C. § 1132(a)(1)(A) and (c).

*Id*. at 27-35.

After various agreed-upon extensions, BCI and Micron filed Motions to Dismiss on July 14, 2023. Dkts. 12, 15. Both Motions request dismissal of claims B, C, and D. BCI discusses all three claims in its motion. For its part, Micron simply joined BCI's motion as to claims B and C and chose to focus more fully on claim D.

On September 5, 2023, the H. Family filed a joint opposition to both Motions to Dismiss. Dkt. 19. It also filed its first Motion to Strike asking that the Court strike a declaration filed in support of BCI's Motion to Dismiss that included the benefit plan, arguing consideration of that document would be erroneous because only the complaint (and other limited materials) can be considered at this stage of the case. Dkt. 20.

BCI and Micron replied to their Motions to Dismiss (Dkts. 24, 25) and BCI opposed the Motion to Strike (Dkt. 27).

On October 7, 2023, the H. Family replied to its first Motion to Strike (Dkt. 29) and

filed a second Motion to Strike (Dkt. 30) asking the Court to strike an exhibit containing two emails BCI included with its reply brief.[4] Briefing on that motion concluded and the Court set all motions for oral argument. Dkt. 33.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1122.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that

---

[4] The documents at issue were also the subject of the Motion to Seal. While the H. Family has moved to strike the documents, it did not oppose sealing them as each contained private health information. Dkt. 28.

MEMORANDUM DECISION AND ORDER – 6

are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See, e.g., Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. DISCUSSION

As noted, Micron and BCI's Motions to Dismiss are virtually identical. Accordingly, the Court will analyze them in tandem. As a threshold matter, however, the Court must briefly address the H. Family's two Motions to Strike as that will dictate what the Court can consider in analyzing the Motions to Dismiss.

### A. Motions to Strike

The H. Family has asked the Court to strike one document BCI submitted in support of its opening brief to dismiss, and two other documents included in support of its reply. The H. Family alleges the three documents are outside the scope of its Complaint and, therefore, cannot be considered unless the Court converts the Motions to Dismiss into a Motion for Summary Judgment.

The H. Family is correct in that a court must normally convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment if it assesses evidence outside of the pleadings. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56"). If a court converts

a motion to dismiss or motion for judgment on the pleadings into a motion for summary judgment, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Nevertheless, "[a] court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (cleaned up). The Court can only do this, however, if the complaint specifically refers to the document and the document's authenticity is not questioned. Fed. R. Evid. 201(f); *Townsend v. Columbia Operations*, 667 F.2d 844, 848–49 (9th Cir. 1982).

1. *First Motion to Strike (Dkt. 20)*

In its first Motion to Strike, the H. Family asks the Court to strike the Declaration of Christy Thomas that was filed in support of BCI's Motion to Dismiss. Dkt. 20, at 2. In her Declaration, Thomas includes a copy of the Plan. Dkt. 12-2, at 5-92. The H. Family argues it did not include a copy of the Plan in the Complaint and so the Court should strike it and not consider it at this time. Alternatively, the H. Family asks the Court to convert BCI's Motion to Dismiss into a motion for summary judgment and provide them time to conduct discovery. *See generally* Dkt. 20.

For its part, BCI contends there is no reason to strike the document because the Complaint repeatedly references the Plan.[5]

---

[5] The Plan is referenced 97 times in the Complaint. *See generally* Dkt. 1.

MEMORANDUM DECISION AND ORDER – 8

2. *Second Motion to Strike (Dkt. 30)*

In its second Motion to Strike, the H. Family requests that the Court strike the second Declaration of Christy Thomas that was filed in support of BCI's Motion to Dismiss. Dkt. 26. In this second Declaration, Thomas includes copies of two email correspondences between BCI and Lori H. *Id*. Alternatively, as before, the H. Family asks the Court to convert the motion to dismiss into a motion for summary judgment if it plans to consider the evidence.[6]

As the Court noted at oral argument, these documents will be relevant later in this case. Accordingly, it will not strike them from the record. But, consistent with caselaw, it will not consider them for purposes of the present motions. *Ritchie*, 342 F.3d at 908.[7] Thus, both Motions to Strike are DENIED.

**B. Motions to Dismiss (Dkts, 12, 15)**

1. *Count B*

In Count B, the H. Family alleges Defendants failed to provide a full and fair review of A.H.'s claim for benefits in violation of 29 CFR § 2560.503-1 and 29 CFR § 2590.715. Defendants assert that Count B must be dismissed because 29 CFR § 2560.503-1 and 29 CFR § 2590.715 do not provide an independent cause of action. Rather, they assert, a claim such as this may only be brought under Section 1132(a)(1)(B) of ERISA.

Ironically, the H. Family's first cause of action *is* for benefits under Section

---

[6] These correspondences, among others, are also referenced in the Complaint. *Id*. at 21–22.

[7] In like manner, the H. Family submitted a part of one of the emails as well (Dkt. 19-1). BCI has not moved to strike it. Nevertheless, the Court will not consider it at this time for the reasons stated above.

1132(a)(1)(B) of ERISA. Because of this, the H. Family argues Defendants are elevating form over substance in their opposition to Count B because Count A covers the statutory basis for Count B, and it can incorporate those same facts between both causes of action. The Court agrees with this in principle. As it has explained before, under the principle of incorporation, allegations in one area of a Complaint that support the individual causes of action (even if not specifically reiterated in a later cause of action) are sufficient under *Iqbal* and *Twombly. See Sagastume v. RG Transportation, Inc.*, 2019 WL 2218986, at *8 (D. Idaho May 21, 2019) (finding that while the plaintiff had not stated a particular fact in a claim section of his complaint, this omission did not warrant dismissal of that claim as those facts were stated earlier and the plaintiff had incorporated those paragraphs in the relevant section).

But that is not really what is going on here. Even if the Court were to allow Count B to "fall under" Count A—or better yet, allow the H. Family opportunity to retitle Count B to clearly state it is brought under Section 1132(a)(1)—Defendants still object on substantive grounds claiming the requested relief is "implausible" because benefits are not a potential remedy under these circumstances; remand and a renewed determination are.

The Court has reviewed the cases cited by both parties. Unfortunately, a simple answer is not to be found.

In 2008, Judge David O. Carter—sitting by designation in Idaho—recognized that the "method of enforcing regulations under 29 C.F.R. § 2560.503-1 . . . is through a suit under Section 1132(a)(1), which provides a right of action to enforce rights under an ERISA plan." *Rucker v. Benesight, Inc.*, 2008 U.S. Dist. LEXIS 146114, at *10 (D. Idaho

Sep. 22, 2008). Recently, Judge Amanda K. Brailsford dealt with a similar "full and fair review" argument, but the Plaintiffs in that case couched those allegations *within* the broader ERISA umbrella—as Defendants here suggest is appropriate. *See Zink v. St. Luke's Health Sys., Ltd.,* 2023 WL 5748158, at *4 (D. Idaho Sept. 6, 2023). In fact, most of the cases the Court found in this District dealing with 29 C.F.R. § 2560.503-1 were *not* stand-alone claims. This analysis bodes in favor of Defendants and the idea that the H. Family cannot bring two separate claims.

That said, in 2021, Judge William B. Shubb—also sitting by designation—cited the Ninth Circuit and noted that a full and fair review claim *could* be brought alongside a broader ERISA claim if the claims "plead distinct remedies." *Langemo v. Blue Cross of Idaho Health Serv., Inc.*, 2021 WL 1238370, at *5 (D. Idaho Mar. 30, 2021) (citing *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960–61 (9th Cir. 2016)). This is so because, while subsection (a)(1) of 29 U.S.C. § 1132 speaks in terms of recovering "benefits,"[8] subsection (a)(3) is the "catchall" or "safety net"[9] designed to provide "appropriate equitable relief for injuries caused by violations" of the statute that are not "elsewhere adequately remedy." *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996). This reasoning bodes in favor of the H. Family and allowing them to plead two separate causes of action.

The problem here, however, is that the H. Family brought Count B under the code

---

[8] "A civil action may be brought—(1) by a participant or beneficiary—(B) *to recover benefits* due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added).

[9] "A civil action may be brought—(3)(B) to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B) (emphasis added).

MEMORANDUM DECISION AND ORDER – 11

section (29 C.F.R. § 2560.503-1) as opposed to the statutory section (29 U.S.C. § 1132(a)(3)). The H. Family clearly knows how to bring a claim under § 1132(a)(3)'s catchall because Counts C and D are brought pursuant to that very provision. But the title of Count B is not what bothers the Court. The bigger problem is the requested relief itself. In both Counts A and B, the H. Family requests identical relief: recovery of "the benefits due to A.H. under the terms of the Plan." Dkt. 1, at 28, 30. Because benefits are already covered under Count A, Count B must—pursuant to the Ninth Circuit—request a different or "distinct" remedy. *Langemo*, 2021WL 1238370, at *5.

Thus, while the Court disagrees (at least in part) with Defendants' premise, it agrees in the outcome. Said differently, the Court disagrees with Defendants that the H. Family is *foreclosed* from bringing a separate cause of action for a purported "full and fair review" violation of A.H.'s benefits. But the Court agrees the current Count B does not accomplish that task, and the current claim cannot proceed as the requested relief is a recovery of benefits (which is already covered in Count A). Thus, Count B must be dismissed.

If the H. Family wishes to replead its "full and fair review" claim, it may do so, but it must comport with applicable caselaw and it must request some other kind of equitable relief under 29 U.S.C. § 1132(a)(3).

2. Count C

In Count C, the H. Family alleges Defendants violated the MHPAEA by restricting or excluding the treatment A.H. received at Oxbow. Defendants allege this Count must be dismissed because they initially covered treatment at Oxbow and then discontinued said treatment legally and consistently with the terms of the Plan.

MEMORANDUM DECISION AND ORDER – 12

The Court must again stress *where* this case is procedurally. The parties spend a great deal of time arguing the facts of this case: whether the decision to end treatment at Oxbow was proper, what criteria were used, and whether those criteria were sufficient (under the law and under the plan). But those are questions for a fully developed record. The Court, at this stage, must look at the Complaint, take the well-pleaded allegations as true, and determine if there is some *legal* barrier to any claim.[10]

Thus, Defendants' arguments about treatment limitations, NQTLs, and medical necessity will not be entertained at this time. Those are factual discussions for later after discovery.

The Court will only look at one Count C argument by Defendants: that the H. Family lacks standing to bring this claim because there is no nexus between the Plan terms it asserts support the claim and Defendants' stated reasons for denial of treatment.

In order to prevail on a MHPAEA claim, a plaintiff must establish that the limitation on mental health/substance use disorder treatment was material to the health plan's decision to deny coverage. Here, Defendants allege the H. Family is bringing its MHPAEA claim for a variety of reasons, but that none of those reasons are related to the real reason they denied coverage for A.H.: a lack of medical necessity. The Court disagrees.

To be sure, as part of Count C, the H. Family alleges the Defendants violated the Plan requirements related to in-network/out-of-network provider options, pre-

---

[10] Such as the Court just did. It found the H. Family had misunderstood a legal nuance in 29 U.S.C. § 1132 and the types of relief that could be requested. As a result, it found they could not continue with that count as pleaded. But the Court did not, and could not, look at what comprised (or did not comprise) any full and fair review of A.H.'s treatment. That question is left for later in the case.

MEMORANDUM DECISION AND ORDER – 13

authorizations, and credentialing policies. None of those allegations, however, relate to BCI's reason for denial (medical necessity). But the H. Family also clearly alleges that it was Defendants' use of the medically necessity criteria that created the disparity between mental health requirements and requirements for other coverage. Dkt. 1, at 32, 34. Thus, the H. Family has claimed (in part) that a violation occurred here because Defendants based their decision (in part) on medical necessity criteria that may or may not be applicable to other types of treatment and care.

Again, at this preliminary stage, the Court is not finding that the H. Family's claims are successful, only that the claims may proceed. Thus, based upon the allegations in the complaint, it does appear the H. Family has presented a plausible cause of action that Defendants violated the MHPAEA by requiring more of persons seeking mental health/ substance abuse treatment than other medical treatments. This count will not be dismissed.

3. Count D

In Count D, the H. Family asserts Defendants failed to provide them certain documents and other information when requested. It seeks statutory penalties for this failure. No party disputes that BCI and Micron sent various documents to the H. Family; the question, however, is whether those documents and disclosures were adequate under 29 U.S.C. §1185a(7) and 29 U.S.C. §1024(b)(4).

As the Court alluded to above when discussing Claim C, these questions are very fact driven. As one example, while Defendants list all the documents they provided the H. Family and summarily claim that is all that is required, the statute provides (in addition to certain specific documents) for any "other instruments under which the plan is established

MEMORANDUM DECISION AND ORDER – 14

or operated." 29 U.S.C. §1024(b)(4). Candidly, the Court does not know what all may fall under this category of documents. It does not know whether those documents are in BCI's possession or Micron's possession.[11] And it does not know the extent of the documents provided to the H. Family because it can only look at the Complaint at this stage of the case.

Ultimately, whether Defendants provided adequate information to the H. Family is a question for summary judgment or trial.[12] The question now is simply whether the H. Family has pleaded a plausible claim that Defendants did not provide them with adequate information. Because the Court does not yet know the full extent of what Defendants actually provided to the H. Family, it cannot rule on this today. This count is better reserved for after discovery and will not be dismissed at this time.

## V. CONCLUSION

Count B must be dismissed because it requests the same relief as Count A.

Counts C and D may proceed. Again, the Court is not finding Counts C and D will ultimately prevail; only that each survives initial review. After discovery, the Court (or a jury) will be in a better position to rule on whether BCI's review and denial of A.H.'s

---

[11] BCI argued that the statutory regulations only apply to the "Plan Administrator," and claimed that, because it is the "claims administrator" and Micron is the "plan administrator," it cannot be held liable for Count D. Setting aside the fact that the Plan itself (which the Court cannot consider at this stage) says on its face, "Administered by Blue Cross of Idaho," (Dkt. 12-2, at 6), the H. Family appears to concede that Micron, and not BCI, is the Plan Administrator. Dkt. 19, at 19. Nevertheless, it contends BCI is liable under the other statutory provisions. *See* 29 U.S.C. § 1185a(7)(B)–(C). Regardless, discovery is necessary to flesh out the relationship between Defendants and what documents were provided to the H. Family.

[12] The only other case the Court could locate in the District of Idaho that dealt with this issue did so at the summary judgment stage. *See Hoobery v. Franklin Bldg. Supply Co.*, 2007 WL 2684835, at *8 (D. Idaho Sept. 7, 2007).

MEMORANDUM DECISION AND ORDER – 15

coverage was appropriate under the MHPAEA and whether BCI and Micron provided all relevant documents and information to the H. Family as statutorily required. But for now, those claims remain.

## VI. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. Defendants' Motions to Dismiss (Dkts. 12, 15) are GRANTED in PART and DENIED in PART. The Motions are granted to the extent that Count B is dismissed without prejudice. The Motions are denied as to Counts C and D. Should the H. Family wish to replead Count B, it must file an amended complaint, consistent with the Court's analysis above, within 30 days of the date of this order.

2. The H. Family's Motions to Strike (Dkts. 20, 30) are DENIED as outlined above.

DATED: May 2, 2024

_____
David C. Nye
Chief U.S. District Court Judge