McFarland Ritter PLLC
Ryan T. McFarland, ISB No. 7347
Maren E. Adams, ISB No. 9684
P.O. Box 1335
Meridian, ID 83680
Telephone: 208.895.1291
Facsimile: 208.895.1270
Email: ryan@mcfarlandritter.com
       maren@mcfarlandritter.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRAIG H., and A.H., | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| BLUE CROSS OF IDAHO, DBA BLUE CROSS OF IDAHO; BLUE CROSS OF IDAHO CARE PLUS, INC.; BLUE CROSS OF IDAHO FOUNDATION FOR HEALTH, INC.; BLUE CROSS OF IDAHO HEALTH SERVICE, INC., | ) |
| and | ) |
| MICRON TECHNOLOGY, INC., a Delaware corporation, MICRON TECHNOLOGY, INC. HEALTH AND WELFARE BENEFITS PLAN, MICRON TECHNOLOGY, INC. SELF-INSURED GROUP HEALTH PLAN, a Constituent Plan of the Micron Technology, Inc. Health and Welfare Benefits Plan, | ) |
| Defendants. | ) |

Case No. 1:23-cv-00221-DCN

**PLAINTIFFS' MOTION FOR CLARIFICATION OF SCOPE OF DISCOVERY**

Plaintiffs Craig H. and A.H. (referred to herein as "the H. Family"), by and through their

attorneys of record, McFarland Ritter PLLC, submit this Motion for Clarification of Scope of

Discovery.

In the Litigation Order and Notice of Telephonic Scheduling Conference (Dkt. 40), this Court ordered the parties to file a joint Litigation Plan and Discovery Plan by July 5, 2024, followed by a telephonic scheduling conference on July 12, 2024 to confirm the deadlines set forth in the joint Litigation Plan. The parties were unable to agree upon the scope and deadlines for either the Litigation Plan or the Discovery Plan. Accordingly, on July 5, 2024, the Court sent an email to the parties' counsel requesting some supportive case law for the parties' respective views about the scope of discovery. Thereafter, counsel for the parties participated in an informal telephonic conference with the Court on July 15, 2024, wherein Defendants agreed to produce the administrative record on or before August 16, 2024, the H. Family would have until September 13, 2024, to review and supplement the record, and then the parties were to "meet and confer regarding any outstanding discovery disagreements and finalize the litigation and discovery deadlines for the case." (Dkt. 51).

On August 16, 2024, Defendants produced their version of the administrative record. Plaintiffs' counsel reviewed Defendants' administrative record and on September 14, 2024, emailed Defendants' counsel requesting that certain Blue Cross of Idaho ("BCI") materials be added to the administrative record, and inquiring about the totality of the "NQTL Analysis" Defendants provided as part of their administrative record. A copy of this email is attached hereto as Exhibit A.

On October 9, 2024, Defendants' counsel emailed Plaintiffs' counsel and agreed to include some of the supplementary materials Plaintiffs requested, but not all of it. The materials that they refused to include in the administrative record, but which Plaintiffs believe should be included, are:

- Two BCI form letters to "out-of-state non-contracting providers" regarding prior authorization requirements for admission to a residential treatment center, partial hospitalization program, or intensive outpatient program;

- Four BCI Provider Administrative Policies related to BCI's inquiry and appeals process, prior authorization requirements, credentialing standards for facilities and skilled nursing facility coverage provisions; and

- BCI Explanation of Benefits forms regarding services provided to A.H. at the facility in which Defendants denied any further treatment after September 21, 2022.

Now, to be clear, the above documents are ***already in all parties' possession***. Defendants do not have to search for any of them. Everyone already has them.

Still, Defendants argue these materials do not constitute "relevant information for the purposes of the content of an administrative record." A copy of Defendants' counsel's October 9, 2024 email is attached hereto as Exhibit B.

Defendants also refused to respond to the H. Family's inquiry about BCI's previously produced NQTL Analysis because it appeared to "address issues related to the parity claim" and thus was not part of what constitutes the content of the administrative record for the benefit claim. *See* Exhibit B hereto.

On November 7, 2024, Plaintiffs' counsel emailed Defendants' counsel to meet and confer. After several emails were exchanged, counsel for the parties met and conferred by telephone on November 26, 2024. Defendants' counsel once again refused to include any of the above-identified documents in the administrative record, and was not prepared to address discovery issues related to Plaintiffs' MHPAEA claim. Plaintiffs' counsel summarized the meet and confer discussion in an email to Defendants' counsel, dated November 26, 2024, and that

email is attached hereto as Exhibit C. On December 4, 2024, Defendants' counsel replied to Plaintiffs' counsel's email, a copy of which is attached hereto as Exhibit D. Defendants' counsel continues to argue that the meet and confer was limited to determining the contents of the administrative record only, that the "purported policies" Plaintiffs want to add to the administrative record were never used to make benefit determinations in this case and therefore cannot be part of the administrative record, and discovery issues regarding Plaintiffs' MHPAEA claim could be discussed "when that issue is ripe, as well." *See* Exhibit D.

The H. Family readily acknowledges that ERISA law and the federal discovery rules provide the parameters of what materials constitute the administrative record, and what other relevant information may be discoverable to support the parties' claims or defenses in the case. Defendants' attempts to "unilaterally compile" the "complete" administrative record, and then ascertain – by themselves - the scope of what is or may be considered relevant and discoverable beyond such record is unfairly prejudicial to the H. Family. See *Walker v. AT&T Benefit Plan NO. 3*, 338 F.R.D. 658, 661-64 (C.D. Cal. 2021). Defendants' refusal to supplement the administrative record – a record that they unilaterally compiled – with the additional information at issue in this motion – precludes relevant and necessary information that ERISA regulations consider part of such administrative record. *See* 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv).[1]

---

[1] Subsection (m)(8) provides that a document, record, or other information shall be considered "relevant" to a claimant's claim if it:

(i) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

(iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

The additional information the H. Family wants included in the administrative record are (i) BCI's own form letters delineating prior authorization requirements for out-of-network residential treatment centers and partial hospitalization programs, and (ii) BCI's provider administrative policies related to facilities, prior authorization and claims submission. They are "statement[s] of policy or guidance with respect to the plan concerning the denied treatment option or benefit." 29 C.F.R. § 2560.503-1(m)(8)(iv).  The content of Defendant BCI's own policies and form letters - that are specifically related to benefit determinations for claimants like A.H. receiving treatment at an out-of-network sub-acute facility - are inherently and unavoidably "considered" by BCI in the course of its benefit determinations "without regard to whether such [policy] was relied upon in making the benefit determination." *Id.* It is tautological to say that administrative policies and form letters set forth, at least in part, the framework for a business's decisions: that is what makes them "policies."[2] Additionally, the Explanation of Benefits (EOB) forms that Plaintiffs want included in the administrative record (and that Defendants are refusing): 1) were generated by BCI following its September 21, 2022 adverse benefits determination denying A.H.'s continued treatment at Oxbow Academy, each of which denies coverage because the services are "not medically necessary"; and 2) are relevant to the H. Family's claims that Defendants' adverse benefits determination on September 21, 2022 and the ensuing denials of coverage thereafter were not "made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5) and (m)(8)(iii). The EOB's both explain (in part) Defendants' position at the time, and their juxtaposition vis-à-vis their Policies are important evidence in this case.

---

[2] And if it is tautological to say that, it follows that it is nonsensical for Defendants to contend, as they appear to be, that those same policies did not inform their decisions in this case.

Relatedly, Plaintiffs' counsel's July 11, 2024 letter to the Court provides ample case law to support a more expansive scope of discovery in ERISA cases if there are procedural irregularities alleged that prevent full development of the administrative record. That letter is attached here as Exhibit E. Plaintiffs' Amended Complaint (Dkt. 39) alleges numerous procedural irregularities for which additional discovery – written and oral depositions – beyond the administrative record is both relevant and necessary.

The H. Family also takes issue with Defendants' narrow view that the meet and confer between counsel is only to determine the contents of the administrative record. To the contrary, this Court's docket entry order on July 15, 2024 instructed the parties to "meet and confer regarding <u>any</u> outstanding discovery disagreements and finalize the litigation and discovery deadlines for the case." (Dkt. 51) (emphasis added). Defendants have repeatedly refused to respond to the question in Plaintiffs' counsel's email regarding BCI's NQTL Analysis (for Medical Necessity) because they claim it is related to the MHPAEA claim, and therefore is not part of the content of the administrative record. Defendants themselves, however, included the NQTL Analysis in their own version of the administrative record that they provided to the H. Family. It's nonsensical for Defendants to include the NQTL Analysis in the administrative record, and then refuse to answer a question about the contents of such document because it is unrelated to the "content of the administrative record for the benefit claim." Exh. B. Defendants' counsel's comment – in its most recent email to Plaintiffs' counsel - that possible MHPAEA claim discovery could be discussed "when that issue is ripe" also reflects their misguided view of this Court's docket entry order to resolve <u>any</u> outstanding discovery disagreements. *See* Exh. D.

Moreover, Defendants misconstrue a portion of this Court's Memorandum Decision and Order (Dkt. 36) regarding Claim C and assert that "Plaintiffs do not have standing to bring

MHPAEA claims related to in-network/out-of-network provider options, pre-authorizations, and credentialing policies because they do not relate to BCI's medical necessity decision." (Dkt. 47 n.4). Defendants rely on this interpretation of the Court's Order to argue that parity issues that go beyond medical necessity "are not proper topics of discovery in this case." *Id.* But this Court did not make any such ruling regarding the H. Family's standing vis-a-vis their MHPAEA claim. Rather, the Court determined that the H. Family has "presented a plausible cause of action that Defendants violated the MHPAEA by requiring more of persons seeking mental health/substance abuse treatment than other medical treatments." (Dkt. 36, p. 14). Discovery is a necessary and important tool for any plaintiff to fully litigate the claims at issue. *See* Fed. R. Civ. P. 26(b)(1). Discovery exists to afford the H. Family the opportunity to request <u>all</u> relevant information related to their numerous allegations that Defendants violated the MHPAEA by requiring "more" of persons seeking mental health treatment <u>including but not limited to</u> Defendants' medical necessity criteria as set forth in BCI's NQTL Analysis (that they included in the administrative record). Scope-of-discovery questions could be more efficiently decided now, rather than in piecemeal form in motions for protective orders and motions to compel during discovery; that, presumably, is why the Court instructed the parties to "meet and confer regarding <u>any</u> outstanding discovery disagreements" now. *See* Dkt. 51 (emphasis added).

The H. Family therefore moves this Court for an order clarifying that (i) the administrative record shall include all materials requested by the H. Family (as set forth herein); (ii) the scope of discovery shall include written discovery and depositions regarding the benefit determinations, appeals process, and procedural irregularities alleged in the Amended Complaint, as well as Plaintiffs' MHPAEA claim and Defendants' NQTL analysis; and (iii) that the parties' joint Discovery Plan and Litigation Plan, with the scope of discovery clarified

pursuant to this motion, be filed within 10 days of the Court's order on this Motion.

DATED THIS 9th day of December, 2024.

By /s/ Ryan T. McFarland
   Ryan T. McFarland, ISB No. 7347
   Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, I served a copy of the foregoing on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

| | |
|---|---|
| Nicole C. Hancock | *nicole.hancock@stoel.com* |
| Mark L. Bieter | *mark.bieter@stoel.com* |
| Samuel Andrew Diddle | *sdiddle@elamburke.com* |
| Rebecca R. Hanson | *rhanson@reedsmith.com* |
| Dan J. Hofmeister, JR | |

/s/ Ryan T. McFarland
Ryan T. McFarland

# EXHIBIT A

12/9/24, 10:32 AM
Case 1:23-cv-00221-DCN Document 52 Filed 12/09/24 Page 11 of 33
RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN - Accounting - Outlook

 Outlook

---

## RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

**From** Ryan McFarland <ryan@mcfarlandritter.com>

**Date** Sat 9/14/2024 8:29 PM

**To** Samuel A. Diddle <sdiddle@elamburke.com>

**Cc** rhanson@reedsmith.com <rhanson@reedsmith.com>; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com) <dhofmeister@reedsmith.com>; mark.bieter@stoel.com <mark.bieter@stoel.com>; Griffith, Kiran H. <kiran.griffith@stoel.com>; nicole.hancock@stoel.com <nicole.hancock@stoel.com>

---

Counsel,

We have reviewed the administrative record produced by Micron and BCI on August 16, 2024. In response, we request the following:

1. Supplementing the record with the following materials that are in my clients' possession - and likely in your clients' possession as well:

- Undated, general BCI letter to "Out-of-State Non-Contracting Provider" from the BCI "Behavior Health Clinical Review Team" regarding pre-admission authorization review to an RTC
- Undated, general BCI letter to "Out-of-State Non-Contracting Provider" from the BCI "Behavior Health Clinical Review Team" regarding prior authorization review for admission to a PHP or IOP program
- BCI Provider Administrative Policy (PAP) 236 - Inquiry and Appeals Process
- BCI Provider Administrative Policy (PAP) 241 - Prior Authorization Requirements
- BCI Provider Administrative Policy (PAP) 400 - Credentialing/Recredentialing Standards for Facilities
- BCI Provider Administrative Policy (PAP) 421- Skilled Nursing Facility Coverage Provisions
- All BCI Explanation of Benefits (EOBs) for services provided to A.H. by Oxbow Academy and Oasis Ascent LLC between July 26, 2022 and May 31, 2023
- Two emails sent to "hickmans.2800@gmail.com" from Jennifer Cafferty, a BCI employee, on November 22, 2022: one sent at 3:10pm with the subject "BCI Correspondence" and the second set at 3:45pm with the subject "Recall: BCI Correspondence"

2. If there is an audio recording of the meeting held on September 29, 2022 via conference call with the parents of A.H. and BCI employees Angela Labbe, Eric Champlin, Jared Benson, Tomais Smith and Jessica Anderson, please produce a copy of that recording.

3. Confirmation that other than the "NQTL Analysis" documentation BCI emailed to my clients on December 7, 2022, which is included in the Administrative Record your clients produced (bates stamped 0001756-0001758), neither BCI nor Micron have any additional documentation, materials or evidence responsive to the relevant provisions in the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) as amended, or 29 CFR Section 2590.712(d)(3).

Thank you,
Ryan

Ryan McFarland
Legal Counsel
P.O. Box 1335
Meridian, ID 83642
p. 208.895.1291
c. 208.789.1643
f. 208.895.1270
mcfarlandritter.com

12/9/24, 10:32 AM

Case 1:23-cv-00221-DCN Document 52 Filed 12/09/24 Page 13 of 33

RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN - Accounting - Outlook



This e-mail message is intended only for named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify me immediately if you have received this message in error, and delete the message.

---

**From:** Kathleen M. Donovan <kmd@elamburke.com> **On Behalf Of** Samuel A. Diddle
**Sent:** Friday, August 16, 2024 3:09 PM
**To:** Ryan McFarland <ryan@mcfarlandritter.com>
**Cc:** rhanson@reedsmith.com; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com) <dhofmeister@reedsmith.com>; mark.bieter@stoel.com; Griffith, Kiran H. <kiran.griffith@stoel.com>; Samuel A. Diddle <sdiddle@elamburke.com>; nicole.hancock@stoel.com
**Subject:** Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

See attached.

**Samuel A. Diddle** | Shareholder



251 E. Front St., Ste. 300 | Boise, ID 83702
T: (208) 343-5454 | E: sad@elamburke.com

Confidentiality Notice:  This e-mail message may contain confidential and privileged information exempt from disclosure under applicable law.  If you have received this message by mistake, please notify us immediately by replying to this message or telephoning us, and do not review, disclose, copy, or distribute it.  Thank you.

# EXHIBIT B

 Outlook

---

## Hickman v. BCI AR

---

**From** Samuel A. Diddle <sdiddle@elamburke.com>

**Date** Wed 10/9/2024 2:42 PM

**To**     Ryan McFarland <ryan@mcfarlandritter.com>

📎 2 attachments (27 MB)

EOBHickman 01.30.2023.pdf; Explanation of Benefits.pdf;

Ryan:

We have reviewed the information that you proposed for supplementation to the Administrative Record. With respect to the items that you have identified:

<u>Paragraph 1</u>:

We agree that the "two emails sent to 'Hickman2800@gmail.com' from Jennifer Cafferty" can be included in the Administrative Record.

The EOBs identified in your seventh bullet point paragraph 1 are not all relevant information for the purposes of the content of an Administrative Record. EOBs have already been included within the Administrative Record. *See* AR 1:23-cv-221-DCN_0002744 – 0002761. The EOB dated January 30, 2023 containing dates of service August 8, 2022 through December 28, 2022 can be included. I have attached the EOBs in the current record and EOB relevant to claims in dispute that can be added.

The remaining records identified in numbered paragraph 1 of your email do not constitute relevant information for the purposes of the content of an Administrative Record, 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv) and cannot be included in the Administrative Record applicable to the benefit claim.

<u>Paragraph 2</u>:

There is no recording of the September 29, 2022 meeting.

<u>Paragraph 3</u>:

Appears to address issues related to the parity claim. For purposes of the content of the Administrative Record for the benefit claim, no response is necessary.

If you have any questions or if you would like to discuss this matter in greater detail, please do not hesitate to contact me. Thanks.

## Samuel A. Diddle | Shareholder



251 E. Front St., Ste. 300 | Boise, ID 83702
T: (208) 343-5454 | E: sdiddle@elamburke.com

Confidentiality Notice: This e-mail message may contain confidential and privileged information exempt from disclosure under applicable law. If you have received this message by mistake, please notify us immediately by replying to this message or telephoning us, and do not review, disclose, copy, or distribute it. Thank you.

# EXHIBIT C

12/9/24, 10:33 AM
Case 1:23-cv-00221-DCN Document 52 Filed 12/09/24 Page 18 of 33
RE: Hickman vs. Micron - Case No. 1:23-cv-221-DCN - Accounting - Outlook

 **Outlook**

---

## RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

---

**From** Ryan McFarland <ryan@mcfarlandritter.com>

**Date** Tue 11/26/2024 10:41 AM

**To** Samuel A. Diddle <sdiddle@elamburke.com>

**Cc** rhanson@reedsmith.com <rhanson@reedsmith.com>; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com) <dhofmeister@reedsmith.com>; mark.bieter@stoel.com <mark.bieter@stoel.com>; Griffith, Kiran H. <kiran.griffith@stoel.com>; nicole.hancock@stoel.com <nicole.hancock@stoel.com>

Sam,

Thanks for the call just now. I will evaluate our request in light of your explanation of your position, which I understand, is that:

1. The few certain documents (they are highlighted below (and we acknowledge that some of the EOBs are admitted, but not all)) that are in both your clients' possession and mine should not be part of the AR (Administrative Record) because they were not part of the benefits determination, i.e., they were not created or relied on as part of that determination, and
2. The practical argument that I am making – that inclusion of the documents requires no work from anyone because all parties already have the documents in hand – is insufficient to overcome your AR analysis

In an effort to engage with your argument, maybe you can help me understand how policies and "general letters" (policies by another name, in my view) are not part of the benefits determination. The point of any policy is to shape how determinations are to be made – it follows that they must have been "relied on" in making the benefit determination.

Finally, there was some confusion at the end of the call concerning the MHPA claims. You indicated you needed to confer with the Reed Smith team. Please note the highlighted section below from my 9/14 email to you – I had hoped, based on the below, that the MHP issues would be part of our call today.

We'll determine our next move, whether to call you again or file our motion.

Ryan

Ryan McFarland
Legal Counsel
P.O. Box 1335
Meridian, ID 83642
p. 208.895.1291
c. 208.789.1643
f. 208.895.1270
mcfarlandritter.com



This e-mail message is intended only for named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify me immediately if you have received this message in error, and delete the message.

**From:** Ryan McFarland
**Sent:** Saturday, September 14, 2024 8:29 PM
**To:** Samuel A. Diddle <sdiddle@elamburke.com>
**Cc:** rhanson@reedsmith.com; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com) <dhofmeister@reedsmith.com>; mark.bieter@stoel.com; Griffith, Kiran H. <kiran.griffith@stoel.com>; nicole.hancock@stoel.com
**Subject:** RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

Counsel,

We have reviewed the administrative record produced by Micron and BCI on August 16, 2024. In response, we request the following:

**1.** Supplementing the record with the following materials that are in my clients' possession - and likely in your clients' possession as well:

- Undated, general BCI letter to "Out-of-State Non-Contracting Provider" from the BCI "Behavior Health Clinical Review Team" regarding pre-admission authorization review to an RTC
- Undated, general BCI letter to "Out-of-State Non-Contracting Provider" from the BCI "Behavior Health Clinical Review Team" regarding prior authorization review for admission to a PHP or IOP program
- BCI Provider Administrative Policy (PAP) 236 - Inquiry and Appeals Process
- BCI Provider Administrative Policy (PAP) 241 - Prior Authorization Requirements
- BCI Provider Administrative Policy (PAP) 400 - Credentialing/Recredentialing Standards for Facilities
- BCI Provider Administrative Policy (PAP) 421- Skilled Nursing Facility Coverage Provisions
- All BCI Explanation of Benefits (EOBs) for services provided to A.H. by Oxbow Academy and Oasis Ascent LLC between July 26, 2022 and May 31, 2023
- Two emails sent to "hickmans.2800@gmail.com" from Jennifer Cafferty, a BCI employee, on November 22, 2022: one sent at 3:10pm with the subject "BCI Correspondence" and the second set at 3:45pm with the subject "Recall: BCI Correspondence"

2. If there is an audio recording of the meeting held on September 29, 2022 via conference call with the parents of A.H. and BCI employees Angela Labbe, Eric Champlin, Jared Benson, Tomais Smith and Jessica Anderson, please produce a copy of that recording.

3. Confirmation that other than the "NQTL Analysis" documentation BCI emailed to my clients on December 7, 2022, which is included in the Administrative Record your clients produced (bates stamped 0001756-0001758), neither BCI nor Micron have any additional documentation, materials or evidence responsive to the relevant provisions in the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) as amended, or 29 CFR Section 2590.712(d)(3).

Thank you,
Ryan

Ryan McFarland
Legal Counsel
P.O. Box 1335

12/9/24, 10:33 AM    RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN - Accounting 2 - Outlook

Case 1:23-cv-00221-DCN   Document 52   Filed 12/09/24   Page 21 of 33

Meridian, ID 83642
p. 208.895.1291
c. 208.789.1643
f. 208.895.1270
mcfarlandritter.com



This e-mail message is intended only for named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify me immediately if you have received this message in error, and delete the message.

---

**From:** Kathleen M. Donovan <kmd@elamburke.com> **On Behalf Of** Samuel A. Diddle
**Sent:** Friday, August 16, 2024 3:09 PM
**To:** Ryan McFarland <ryan@mcfarlandritter.com>
**Cc:** rhanson@reedsmith.com; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com) <dhofmeister@reedsmith.com>; mark.bieter@stoel.com; Griffith, Kiran H. <kiran.griffith@stoel.com>; Samuel A. Diddle <sdiddle@elamburke.com>; nicole.hancock@stoel.com
**Subject:** Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

See attached.

**Samuel A. Diddle** | Shareholder



251 E. Front St., Ste. 300 | Boise, ID 83702
T: (208) 343-5454 | E: sad@elamburke.com

Confidentiality Notice: This e-mail message may contain confidential and privileged information exempt from disclosure under applicable law. If you have received this message by mistake, please notify us immediately by replying to this message or telephoning us, and do not review, disclose, copy, or distribute it. Thank you.

# EXHIBIT D

12/9/24, 10:31 AM
Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN - Accounting Outlook
Case 1:23-cv-00221-DCN    Document 52    Filed 12/09/24    Page 23 of 33

 Outlook

## Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

**From** Samuel A. Diddle <sdiddle@elamburke.com>

**Date** Wed 12/4/2024 3:30 PM

**To** Ryan McFarland <ryan@mcfarlandritter.com>

**Cc** rhanson@reedsmith.com <rhanson@reedsmith.com>; Dan J. Hofmeister (dhofmeister@reedsmith.com) <dhofmeister@reedsmith.com>; Bieter, Mark L. <mark.bieter@stoel.com>; Griffith, Kiran H. <kiran.griffith@stoel.com>; Hancock, Nicole C. <nicole.hancock@stoel.com>

Ryan,

There is a necessary and legally acknowledged divide and distinction between completion of the Administrative Record and any other properly sought discovery (such as discovery issues relating to Plaintiffs' MHPAEA claim). My understanding of our recent call was to address the former (completing the Admin. Record), which unfortunately did not happen due to your not appreciating the noted distinction.

Plaintiffs can attempt to seek discovery on their MHPAEA claim but documents should not and must not be added to the Administrative Record merely because one party may think there could be documents responsive to "other" discovery requests. Under the law, the administrative record is only to be comprised of documents that were relied upon, submitted, considered, or generated in the course of making the benefit determinations actually at issue in this case. The purported "policies" you are apparently seeking to add to the Administrative Record were never used in making the benefit determinations here, and thus, cannot be part of the Administrative Record. If you think they relate to Plaintiffs' MHPAEA claim, that can be part of a separate discussion and potential motion practice.

After you have looked at the law, as you said you would do, we are happy to get on another call to discuss the administrative record so that can be completed – and we can discuss possible MHPAEA claim discovery when that issue is ripe, as well.

# Samuel A. Diddle | Shareholder



251 E. Front St., Ste. 300 | Boise, ID 83702
T: (208) 343-5454 | E: sdiddle@elamburke.com

Confidentiality Notice: This e-mail message may contain confidential and privileged information exempt from disclosure under applicable law. If you have received this message by mistake, please notify us immediately by replying to this message or telephoning us, and do not review, disclose, copy, or distribute it. Thank you.

**From:** Ryan McFarland <ryan@mcfarlandritter.com>
**Sent:** Tuesday, November 26, 2024 10:41 AM
**To:** Samuel A. Diddle <sdiddle@elamburke.com>
**Cc:** rhanson@reedsmith.com; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com)
<dhofmeister@reedsmith.com>; mark.bieter@stoel.com; Griffith, Kiran H.
<kiran.griffith@stoel.com>; nicole.hancock@stoel.com
**Subject:** RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

Sam,

Thanks for the call just now. I will evaluate our request in light of your explanation of your position, which I understand, is that:
  1. The few certain documents (they are highlighted below (and we acknowledge that some of the EOBs are admitted, but not all)) that are in both your clients' possession and mine should not be part of the AR (Administrative Record) because they were not part of the benefits determination, i.e., they were not created or relied on as part of that determination, and
  2. The practical argument that I am making – that inclusion of the documents requires no work from anyone because all parties already have the documents

12/9/24, 10:31 AM      Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN - Accounting Outlook

Case 1:23-cv-00221-DCN    Document 52    Filed 12/09/24    Page 25 of 33

in hand – is insufficient to overcome your AR analysis

In an effort to engage with your argument, maybe you can help me understand how policies and "general letters" (policies by another name, in my view) are not part of the benefits determination. The point of any policy is to shape how determinations are to be made – it follows that they must have been "relied on" in making the benefit determination.

Finally, there was some confusion at the end of the call concerning the MHPA claims. You indicated you needed to confer with the Reed Smith team. Please note the highlighted section below from my 9/14 email to you – I had hoped, based on the below, that the MHP issues would be part of our call today.

We'll determine our next move, whether to call you again or file our motion.

Ryan

Ryan McFarland
Legal Counsel
P.O. Box 1335
Meridian, ID 83642
p. 208.895.1291
c. 208.789.1643
f. 208.895.1270
mcfarlandritter.com



This e-mail message is intended only for named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify me immediately if you have received this message in error, and delete the message.

---

**From:** Ryan McFarland
**Sent:** Saturday, September 14, 2024 8:29 PM
**To:** Samuel A. Diddle <sdiddle@elamburke.com>
**Cc:** rhanson@reedsmith.com; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com) <dhofmeister@reedsmith.com>; mark.bieter@stoel.com; Griffith, Kiran H. <kiran.griffith@stoel.com>; nicole.hancock@stoel.com
**Subject:** RE: Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

Counsel,

We have reviewed the administrative record produced by Micron and BCI on August 16, 2024. In response, we request the following:

1. Supplementing the record with the following materials that are in my clients' possession - and likely in your clients' possession as well:

- Undated, general BCI letter to "Out-of-State Non-Contracting Provider" from the BCI "Behavior Health Clinical Review Team" regarding pre-admission authorization review to an RTC
- Undated, general BCI letter to "Out-of-State Non-Contracting Provider" from the BCI "Behavior Health Clinical Review Team" regarding prior authorization review for admission to a PHP or IOP program
- BCI Provider Administrative Policy (PAP) 236 - Inquiry and Appeals Process
- BCI Provider Administrative Policy (PAP) 241 - Prior Authorization Requirements
- BCI Provider Administrative Policy (PAP) 400 - Credentialing/Recredentialing Standards for Facilities
- BCI Provider Administrative Policy (PAP) 421- Skilled Nursing Facility Coverage Provisions
- All BCI Explanation of Benefits (EOBs) for services provided to A.H. by Oxbow Academy and Oasis Ascent LLC between July 26, 2022 and May 31, 2023
- Two emails sent to "hickmans.2800@gmail.com" from Jennifer Cafferty, a BCI employee, on November 22, 2022: one sent at 3:10pm with the subject "BCI Correspondence" and the second set at 3:45pm with the subject "Recall: BCI Correspondence"

2. If there is an audio recording of the meeting held on September 29, 2022 via conference call with the parents of A.H. and BCI employees Angela Labbe, Eric Champlin, Jared Benson, Tomais Smith and Jessica Anderson, please produce a copy of that recording.

3. Confirmation that other than the "NQTL Analysis" documentation BCI emailed to my clients on December 7, 2022, which is included in the Administrative Record your clients produced (bates stamped 0001756-0001758), neither BCI nor Micron have any additional documentation, materials or evidence responsive to the relevant provisions in the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) as amended, or 29 CFR Section 2590.712(d)(3).

Thank you,
Ryan

Ryan McFarland
Legal Counsel
P.O. Box 1335
Meridian, ID 83642
p. 208.895.1291
c. 208.789.1643
f. 208.895.1270
mcfarlandritter.com



12/9/24, 10:31 AM      Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN - Accounting Outlook

Case 1:23-cv-00221-DCN    Document 53    Filed 12/09/24    Page 27 of 33

This e-mail message is intended only for named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify me immediately if you have received this message in error, and delete the message.

---

**From:** Kathleen M. Donovan <kmd@elamburke.com> **On Behalf Of** Samuel A. Diddle
**Sent:** Friday, August 16, 2024 3:09 PM
**To:** Ryan McFarland <ryan@mcfarlandritter.com>
**Cc:** rhanson@reedsmith.com; Mr. Dan J. Hofmeister Jr. (dhofmeister@reedsmith.com)
<dhofmeister@reedsmith.com>; mark.bieter@stoel.com; Griffith, Kiran H.
<kiran.griffith@stoel.com>; Samuel A. Diddle <sdiddle@elamburke.com>;
nicole.hancock@stoel.com
**Subject:** Hickman vs. BCI / Micron - Case No. 1:23-cv-221-DCN

See attached.

**Samuel A. Diddle** | Shareholder



251 E. Front St., Ste. 300 | Boise, ID 83702
T: (208) 343-5454 | E: sad@elamburke.com

Confidentiality Notice:  This e-mail message may contain confidential and privileged information exempt from disclosure under applicable law.  If you have received this message by mistake, please notify us immediately by replying to this message or telephoning us, and do not review, disclose, copy, or distribute it.  Thank you.

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

RSUSv12021

# EXHIBIT E



# MCFARLAND◊RITTER

July 11, 2024

**VIA E-MAIL**, *bennett_briggs@id.uscourts.gov*

Bennett Briggs
Clerk to the Honorable Judge David C. Nye
United States District Court for the District of Idaho

     *In re: Craig H. and A.H. v. Blue Cross of Idaho/Micron – Case No. 1:23-cv-00221-DCN*

     Mr. Briggs,

     This letter is in response to your July 5, 2024 email in which you request that the parties provide "a supporting case or two" relevant to our July 15, 2024 telephonic hearing wherein we will discuss the scope of discovery. It is not intended as an exhaustive briefing of the issue.

     As you and Judge Nye consider the issue, the Plaintiffs would ask you to consider the following cases:

     1.    *Abatie v. Alta Health & Life Ins. Co*., 458 F. 3d 955 (9th Cir. 2006). This is the case Defendants cited in their July 3, 2024 letter to the Court. Despite Defendants' reliance on this case to support an argument for narrowing discovery, the case actually points the way toward a more expansive scope of discovery:

> In *Gatti,* we held that "procedural violations of ERISA do not alter the standard of review [from abuse of discretion review to de novo review] unless the violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Id*….
>
> …..
> In general, we review de novo a claim for benefits when an administrator fails to exercise discretion…. Other circuits have also held that review is de novo when the plan administrator fails to exercise discretion. …. Similarly, when a plan administrator's actions fall so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted.
> …..



# MᶜFARLAND◇RITTER

A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion. ..... When an administrator can show that it has engaged in an "ongoing, good faith exchange of information between the administrator and the claimant," the court should give the administrator's decision broad deference notwithstanding a minor irregularity…..A more serious procedural irregularity may weigh more heavily.

When a plan administrator has failed to follow a procedural requirement of ERISA, the court may have to consider evidence outside the administrative record. For example, if the administrator did not provide a full and fair hearing, as required by ERISA, 29 U.S.C. § 1133(2), the court must be in a position to assess the effect of that failure and, before it can do so, must permit the participant to present additional evidence. We follow the Sixth Circuit in holding that, when an administrator has engaged in a procedural irregularity that has affected the administrative review, the district court should "reconsider [the denial of benefits] after [the plan participant] has been given the opportunity to submit additional evidence." *VanderKlok v. Provident Life & Accident Ins. Co.,* 956 F.2d 610, 617 (6th Cir.1992).

As we noted earlier, if the plan administrator's procedural defalcations are flagrant, de novo review applies. And as we also noted, when de novo review applies, the court is not limited to the administrative record and may take additional evidence.

Even when procedural irregularities are smaller, though, and abuse of discretion review applies, the court may take additional evidence when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct.

*Abatie*, 458 F.3d at 971-73. Thus, the scope of discovery depends upon at least two facts: (i) whether the Defendants actions so violated ERISA as to give the Court *de novo* review, and (ii) whether procedural irregularities prevented a full development of the administrative record – which would require discovery beyond the record. Plaintiffs have alleged both of those things here: Defendants have flagrantly violated both ERISA and the MHPAEA, and the procedural irregularities – notably, there has not been the kind of "ongoing, good faith exchange of information" that the law requires (see also *Lisa O. v. Blue Cross of Idaho Health Services Inc.*

PG. 2



# McFarland◇Ritter

2015 WL 3439847 at *8 (D. Idaho)) – are such that discovery beyond the administrative record will be required.

Furthermore, because Plaintiffs believe that the Defendants failed to exercise discretion, the applicable standard of review will be *de novo*, rather than abuse of discretion. Accordingly, the scope of discovery will be much broader than Defendants would have this Court find. Briefing – presumably, summary judgement briefing – will be required to establish the standard of review, but for now it is sufficient under *Abatie* (and the below cases) that discovery beyond the narrow scope the Defendants urge should be allowed, and that is the case regardless of what standard of review the Court ultimately determines applies.

2. In *Abdilnour v. Blue Cross of Idaho Health Services, Inc.*, 2021 WL 2019621 (D. Idaho)[1], the United States District Court for the District of Idaho applied *Abatie* to allow the plaintiff to conduct third-party discovery that went beyond the administrative record "because it may speak to a conflict of interest or procedural violation on the part of Idaho Blue Cross." *Id.* at *5. The Court went on to award "reasonable expenses, including fees" to the plaintiff on both its motion to compel and Blue Cross' motion for protective order. *Id.*

3. *Walker v. AT&T Benefit Plan NO. 3*, 338 F.R.D. 658 (C.D. Cal. 2021). This decision from the Central District of California denied defendants' motion for a protective order under ERISA – a motion in which the defendants there put forth essentially the same "administrative record only" argument that Defendants are advancing here.

In this ERISA action, Plaintiff Kevin Walker contends that Defendants (a benefits plan and its administrator) improperly denied his claim for disability benefits. To help prove his case, which everyone agrees will be reviewed for abuse of discretion, Plaintiff served an initial set of requests for production and interrogatories. Defendants now move for a blanket protective order categorically precluding Plaintiff from seeking *any* discovery because they claim to have produced the "complete administrative record" already. In their view … there is no need to respond— much less object—to Plaintiff's initial set of discovery requests since "no discovery should be conducted outside of the administrative record." But Defendants overstate their position, which confuses the distinction between the abuse-of-discretion standard of review and the scope of discovery. It also collapses what information may be relevant for pretrial discovery into what

---

[1] Defense counsel in this instant case know *Abdilnour* – they were defense counsel in that case, too.

PG. 3

P.O. Box 1335  |  Meridian, Idaho 83680  |  ryan@mcfarlandritter.com  |  p. 208.789.1643  |  f. 208.895.1270



# McFarland◇Ritter

evidence can eventually be admitted at trial (or considered on summary judgment). And it presumes that Defendants can unilaterally compile the "administrative record," declare it "complete," and then embargo any discovery requests by Plaintiff in one fell swoop. Nothing in ERISA law, discovery rules, or common sense supports that distorted line of reasoning.

What is more, the premise of Defendants' argument—that the administrative record is "complete"—crumbles under minimal scrutiny…. The administrative record—properly defined—comprises all documents, records, and other information relevant to Plaintiff's … claim…. So a document, record, or other information is "relevant" to that claim not only if it "[w]as relied upon in making the benefit determination." It is also relevant—and thus part of the administrative record—if it "[w]as submitted, considered, or generated in the course of making the benefit determination, *without regard to whether such document, record, or other information was relied upon in making the benefit determination.*" *Id.* And those are just two of the four categories of information that must be part of the administrative record to comply with the applicable ERISA regulations. All of which, of course, only stands to reason. Otherwise, ERISA plan administrators could cherry-pick evidence that supports the denial of a claim when compiling the administrative record—and all but guarantee victory in every ERISA benefits case—since the District Court's abuse-of-discretion review would (under Defendants' skewed view) be strictly confined to that one-sided evidence. Nothing in ERISA law allows, let alone mandates, such a blinkered, see-no-evil construction of the reviewable administrative record.

…..

…[T]he Ninth Circuit generally permits limited discovery for information outside the administrative record only if relevant to show that the plan or claim administrator (1) was operating under a conflict of interest, or (2) failed to follow a procedural requirement of ERISA that prevented the full development of the administrative record. Even then, such limited discovery is allowed within the discretion of the District Court; it is not required….

[N]o court can intelligently review a benefits determination for reasonableness—even under deferential abuse of discretion review—if the administrative record is not objectively complete,

PG. 4

P.O. Box 1335    Meridian, Idaho 83680    ryan@mcfarlandritter.com    p. 208.789.1643    f. 208.895.1270

# MCFARLAND◇RITTER

accurate, and created in accordance with ERISA regulations. Nor
would it be out of bounds for Plaintiff to propound discovery about
what "administrative processes and safeguards" Defendants
"designed to ensure and to verify that benefit claim determinations
are made in accordance with governing plan documents and that,
where appropriate, the plan provisions have been applied
consistently with respect to similarly situated claimants." Indeed,
any records reflecting compliance with those processes and
safeguards are considered part of the administrative record too....

*Walker*, 338 F.R.D. at 661–64 (internal citations omitted). The Defendants are preemptively
trying to do what the Central District of California disallowed: make themselves the unilateral
determiner of what is in the "administrative record" and so what information is discoverable. The
law does not give Defendants that kind of control.

All of this discussion is premature. Before the Court can rule on the scope of discovery –
or even have meaningful briefing on it – Plaintiffs should be allowed to submit their discovery
requests. Then, if Defendants object to some requests, they can make the objection and Plaintiffs
can argue for why the discovery should be allowed. The Court can then make a ruling(s) on
specific discovery requests, rather than try to decide questions of scope in the abstract. Issues of
scope are going to be dependent on not only the facts of the specific case, but also on the specific
discovery requests made.

Sincerely,

/s/ *signed electronically to avoid delay*

Ryan McFarland

P.O. Box 1335     Meridian, Idaho 83680     ryan@mcfarlandritter.com     p. 208.789.1643     f. 208.895.1270